IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES HOLMES | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-988 |
| | : | |
| CORRECTIONAL OFFICER WHITESIDE, et al. | : : | |

| | | |
|---|---|---|
| JAMES HOLMES | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-748 |
| | : | |
| CORRECTIONAL OFFICER WHITESIDE, et al. | : : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                          **July 26, 2011**

In these consolidated civil actions, pro se Plaintiff James Holmes brings claims under 42 U.S.C. § 1983 for excessive force and failure to respond to grievances against Defendants Correctional Officer Whiteside, Captain Wilson, Deputy Warden of Security Reed, Deputy Warden of Treatment Phillips, Warden McFadden, and Executive Director Healy, arising out of an incident that occurred while Holmes was a pretrial detainee at the Chester County Prison.[1] Defendants ask this Court to dismiss the actions for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] For the reasons set forth below, this Court will grant

---

[1] Because both of the above-captioned actions challenge the legality of the same acts, this Court consolidated the actions by order of July 26, 2011. Healy is only named as a defendant in Civil Action No. 11-988.

[2] Defendants filed a motion to dismiss Civil Action No. 11-988 in March 2011 and a motion to dismiss Civil Action No. 11-748 in June 2011. Holmes filed an opposition to the former motion but has not responded to the latter.

Defendants' motions in their entirety.

**FACTS**[3]

On December 20, 2010, Holmes was in pre-trial custody at the Chester County Prison (the Prison). While conducting a routine pat-down search of Holmes following his visit to the Prison law library, Whiteside pushed Holmes "very hard" in the back, causing Holmes's lower back and/or left side to jerk. Compl. 748 ¶ II.D; Compl. 988 ¶ II.D. When Holmes asked why Whiteside pushed him, Whiteside said Holmes needed to "move up." Compl. 748 ¶ II.D; Compl. 988 ¶ II.D. As Whiteside resumed the pat down, Holmes spread his arms at shoulder height. Whiteside then "threw" Holmes's arms up "in a forceful manner," again causing Holmes to jerk. Compl. 988 ¶ II.D.; Compl. 748 ¶ II.D. Holmes asked Whiteside why he was putting his hands on Holmes, and Whiteside said Holmes needed to move his arms up. Holmes again asked why Whiteside was putting his hands on Holmes without first telling him what to do. Whiteside responded by saying "so what" and asking Holmes what he was going to do about it. Compl. 988 ¶ II.D. Holmes told Whiteside he was going to write him up.

Following this incident, Holmes sought medical attention and was prescribed Motrin and "inflammatory medicine" for his symptoms, including pain in his sciatic nerve. Compl. 988 ¶ III. He also saw a psychologist or psychiatrist for his emotional distress. Holmes wrote grievance letters regarding the incident to the remaining Defendants, and told Wilson and McFadden that Whiteside has a problem with African Americans because Whiteside called an African American co-worker

---

[3] When considering a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true the well-pleaded factual allegations of the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The following facts are drawn from Holmes's Complaints in both Civil Action No. 11-748 (hereinafter Compl. 748) and Civil Action No. 11-988 (hereinafter Compl. 988).

a "spade" and has had several grievances filed against him for racially motivated actions.  Compl. 748 ¶ II.D.  Only Wilson responded to Holmes's letter, describing the grievance as "frivolous" and declining to interview either of the witnesses to the incident identified by Holmes.[4]  Compl. 988 ¶ II.D.

In February 2011, Holmes filed applications to proceed *in forma pauperis* in both of the above-captioned actions.  Both motions were granted, and Holmes's Complaints were thereafter filed.  In both actions, Holmes alleges Whiteside used excessive force in violation of the Eighth Amendment during the pat-down search.  As to the remaining Defendants, Holmes claims they improperly failed to respond to his grievances or, in Wilson's case, inadequately responded to Holmes's grievance letter.  Holmes seeks damages against all Defendants and court-ordered changes to the Prison's grievance procedures.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court must then determine whether the facts alleged in the complaint are sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Phillips*

---

[4] Holmes also alleges he reported the incident to the United States Department of Justice and the Chester County District Attorney's Office, and that Chester County Detective Matt Gordon subsequently interviewed him and his witnesses about the alleged assault.  Holmes is "still waiting for the end result" of Gordon's investigation.  Compl. 988 ¶ II.D.

*v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Where, as here, the plaintiff is proceeding pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

Although Holmes mentions the Eighth Amendment in both of his Complaints, because he asserts he was a pretrial detainee at the time of the incident, Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 1, his excessive force claim arises under the Fourteenth Amendment. *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000). However, in evaluating excessive force claims challenging "the amount of force used on a pretrial detainee for the purpose of institutional security," the same standard governing Eighth Amendment claims applies. *Id.* at 347 (citation omitted); *see also Smith v. Addy*, 343 F. App'x 806, 808-09 (3d Cir. 2009) (evaluating a pretrial detainee's claim he was subjected to excessive force while being transported to his preliminary hearing under the Eighth Amendment standard). Pursuant to this standard, a court must determine "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadisitically for the very purpose of causing harm." *Fuentes*, 206 F.3d at 347 (citation omitted). The factors relevant to whether force used was excessive include

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Washam v. Klopotoski*, 403 F. App'x 636, 640 (3d Cir. 2010). Although the focus of the court's inquiry is on the nature of the force used rather than the degree of the resulting injury, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state an excessive force claim." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); s*ee also Hudson v.*

4

*McMillian*, 503 U.S. 1, 9-10 (1992) (holding the Eighth Amendment does not prohibit "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" (internal quotation marks and citation omitted)).

Here, Holmes alleges Whiteside was unnecessarily rough with him during the pat-down search because Whiteside used force to move Holmes into position for the search without first telling Holmes where to stand or how high to raise his arms. Holmes alleges Whiteside's forceful push injured his back and states when Whiteside forcefully threw Holmes's arms up, it caused Holmes pain in his back and shoulder. Even assuming Whiteside could have secured Holmes's compliance with the search without using any force, the force Holmes alleges was not significantly disproportionate to the need to conduct the search, and Holmes's injuries were not serious. Moreover, although Holmes alleges Whiteside "has a problem with African Americans," Compl. 748 ¶ II.D, he does not allege any facts from which it can plausibly be inferred that Whiteside's conduct during the pat-down search was racially motivated. Even if the pat-down search was overly rigorous, the de minimis use of force alleged "is not of a sort 'repugnant to the conscience of mankind,'" *Hudson*, 503 U.S. at 10 (citation omitted), and is therefore insufficient to state an excessive force claim. *See Washam*, 403 F. App'x at 640 (holding that knocking books out of a prisoner's hands, slamming him to the ground, and handcuffing him, even absent a need to apply force, did not amount to excessive force where there was no evidence the defendant acted with religious or racial animus); *Hughes v. Smith*, 237 F. App'x 756, 758-59 (3d Cir. 2007) (holding a single pat-down frisk in which a corrections officer allegedly touched the plaintiff's genitals did not violate the Eighth Amendment where the officer was alleged to have made sexual comments in the past but not during the frisk at issue); *Headley v. Fisher*, No. 06-6331, 2008 WL 1990771, at *3, *19 (S.D.N.Y. May 7, 2008)

5

(holding allegations that corrections officers pushed a prisoner during searches and roughly searched him did not give rise to an Eighth Amendment excessive force claim); *Rasheed v. Cox*, No. 06-5017, 2007 WL 1314878, at *2 (E.D. Pa. May 3, 2007) (holding a prisoner's allegations that a guard touched his penis, grabbed him by the neck, and a placed him in a bear hug during a pat-down search fell "well short" of stating an Eighth Amendment excessive force claim where the force was not alleged to have caused the prisoner any pain or injury); *Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (granting summary judgment for prison guards who pushed a prisoner into a bar and pulled his hands behind his back to handcuff him, holding that even if the prisoner did not refuse to be placed in handcuffs, the amount of force used "was not significantly disproportional to the goal of handcuffing [the prisoner]").[5]

Holmes has also failed to state a claim against the remaining Defendants insofar as he seeks to hold them liable for failing to respond, or responding inadequately, to his grievances. "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." *Rauso v. Vaughn*, No. 96-6977, 2000 WL 873285, at *16 (E.D. Pa. June 26, 2000); *see also Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005) (holding the "failure to process or respond to [a prisoner's] grievances did not violate his rights to due process and is not actionable"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Because Holmes has not adequately alleged a violation of his constitutional rights, the

---

[5] The remaining Defendants cannot be held liable for excessive force because Holmes does not allege any of them were personally involved in Whiteside's use of force against him. A defendant in a § 1983 action "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement includes "personal direction or . . . actual knowledge and acquiescence." *Id.* Holmes does not allege any such involvement on the part of these Defendants.

6

Defendants' motions to dismiss will be granted. When dismissing a pro se civil rights complaint, a district court must grant leave to amend, "even if the plaintiff does not request it, unless amendment would be futile or leave to amend is not warranted for some other reason." *Tate v. Morris Cnty. Prosecutors Office*, 284 F. App'x 877, 879 (3d Cir. 2008). As set forth above, the use of force alleged by Holmes does not rise to the level of a constitutional violation, and amending his Complaints would not cure this defect. Because amendment would be futile, Holmes's actions will be dismissed with prejudice. *See id.* at 880 (denying pro se prisoner leave to amend when his claims failed as a matter of law).

    An appropriate order follows.

BY THE COURT:

    /s/ Juan R. Sánchez
Juan R. Sánchez, J.